UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                            No. 24-CR-0032 MV

FRANCISCO DIAZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Mr. Diaz's Motion to Dismiss the Indictment for Government Infringement of Mr. Diaz's Sixth Amendment Right to Counsel [Doc. 18] and Mr. Diaz's Motion for Evidentiary Hearing on Defendant's Motion to Dismiss for Government Infringement of Mr. Diaz's Sixth Amendment Right to Counsel [Doc. 79]. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that neither motion is well-taken and both will be denied.

## BACKGROUND

On September 3, 2019, agents with the Drug Enforcement Administration ("DEA") and officers with the Region III Narcotics Task Force (collectively, "agents"), executed a warrant authorizing the search of Francisco Diaz's home at 7 Josephine Road in Santa Fe, New Mexico. After completing both the search and an interview of Mr. Diaz, the agents arrested Mr. Diaz and seized, among other devices, an iPhone in a black case, which they identified internally as "N-26." On September 19, 2019, Mr. Diaz provided written consent to the search of his devices, including the N-26 iPhone. Although the agents attempted to search Mr. Diaz's devices, the Cellebrite technology available at that time was not capable of extracting useful content from the phone.

On April 26, 2023, the government obtained a search warrant for the N-26 iPhone.

1

Examiners at the Regional Computer Forensics Laboratory ("RCFL") were unsuccessful in their attempts to extract data from the phone, and cancelled the extraction on May 22, 2023. On September 28, 2023, however, a supervisor at RCFL advised agents that, with new software updates, it might be possible to extract data from the phone, and offered to make another attempt at doing so. Consequently, on September 29, 2023, the government obtained a second search warrant for the iPhone. The attempts to extract data, however, were again unsuccessful.

Thereafter, on October 27, 2023, the government obtained a third warrant for the N-26 iPhone. The warrant was issued in the District of Columbia and allowed the Computer Crime and Intellectual Property Section's Cybercrime Laboratory ("Cybercrime Lab") to attempt to access the device. The Cybercrime Lab created a "Preliminary Device Report" containing limited data from the phone, including an Apple ID, fdiazjr82@me.com ("Apple ID"), and an associated telephone number, 505-490-3533 ("Phone Number").

Based on that data, on November 13, 2023, the government obtained a search warrant for data from January 1, 2019 to the present, stored at a premises controlled by Apple, Inc., associated with both the Apple ID and the Phone Number. In response to the search warrant, on November 28, 2023, Apple provided to the government emails with links to files encrypted with GPG software. On November 29, 2023, the government forwarded the materials to the Cybercrime Lab, which then provided the government with a zip file containing Cellebrite extractions from the iCloud account associated with the Apple ID and the Phone Number ("Zip File").

On November 30, 2023, Assistant United States Attorney David Hirsch downloaded the data from the Zip File. On December 4, 2023, the government produced the Zip File to defense counsel. Before producing the Zip File to defense counsel, Mr. Hirsch began to review the data, but had only reviewed a small portion of the data at that point, and his review did not reveal any

attorney-client or otherwise privileged communications. On the afternoon of December 7, 2023, Mr. Hirsch provided a copy of a portion of the data to a DEA intelligence analyst and requested that the analyst review the photos and videos for evidence of drug trafficking or related firearms possession.

At 9:55 p.m. on December 7, 2023, Mr. Diaz filed the original version of the instant motion, arguing that, by obtaining data associated with the Apple ID and the Phone Number for a date range that extended beyond the date of Mr. Diaz's arrest, the government accessed attorney-client privileged communications in violation of Mr. Diaz's Sixth Amendment right to counsel.[1] The following day, Mr. Hirsch instructed the DEA analyst to suspend his review of the production and to refrain from disclosing any of the results of his review. Thereafter, the government set up a "filter team," with the intention that the filter team would examine whether the data included any privileged communications, screen any such communications out from the remainder of the data, provide the remaining data to defense counsel for her review, and then, once defense counsel confirmed that the remaining data did not contain privileged communications, provide the data to the trial team.

## DISCUSSION

**I.      Mr. Diaz Is Not Entitled to an Evidentiary Hearing.**

On February 7, 2024, Mr. Diaz filed a Motion for Evidentiary Hearing. Doc. 79. Mr. Diaz alleges in his motion that the government has not produced the entire iCloud download that the government received from Apple. *Id.* at 1–2. Mr. Diaz states that he received two flash drives on February 1, 2024 containing the iCloud data, and that on February 6, 2024, Wade Swift, a

---

[1] The original indictment in case number 19-CR-3336 was dismissed without prejudice on December 21, 2023. Mr. Diaz was re-indicted on January 9, 2024 and the instant Motion was filed on January 14, 2024.

3

telephone forensics expert, advised Mr. Diaz's counsel that "it is possible the government filtered the data it provided to the defense as it appears the defense was not provided the raw data obtained from Apple." *Id.* at 3. In the motion, Mr. Diaz requests an evidentiary hearing so that he may "present evidence that the government indeed is in possession of privileged communications." *Id.*

The government filed a Response, opposing the request for an evidentiary hearing. Doc. 81. In the Response, the government represents that defense counsel was initially provided with the extracted Cellebrite data on December 4, 2023. *Id.* at 2. Defense counsel reported no issues with the data until January 17, 2024. *Id.* at 3. On February 1, 2024, the government sent two more USB drives containing both the raw data and the filtered non-privileged iCloud extraction. *See* Doc. 81–2 at 2. The defense has not provided a log correcting any errors in the filter team's review. Doc. 81 at 8. The government requests that the defense provide them with a log by Monday, February 12, 2024. *Id.*

"A defendant who requests a hearing bears the burden of showing that there are disputed issues of material fact." *United States v. Chavez-Marquez,* 66 F.3d 259, 261 (10th Cir. 1995) (quoting *United States v. Woods,* 995 F.2d 713, 715 (7th Cir. 1993)). Mr. Diaz has not made such a showing. The only fact that Mr. Diaz intends to demonstrate at the evidentiary hearing is that he now has documents confirming that the government had access to privileged communications. But this fact is not in dispute, as the government concedes that, as a result of the search warrant, it may be in possession of privileged documents. As set forth below, the Court presumes this fact when determining the merits of Mr. Diaz's Motion to Dismiss the Indictment.[2] Accordingly, whether the

---

[2] In his Reply, Mr. Diaz alleges for the first time that the government also received communications from the email acsystems77@yahoo.com. Doc. 83 at 2. Because the Court presumes that the government had access to privileged communications, the defense's Reply does not change the Court's analysis.

government has access to privileged documents is not a disputed issue of material fact, and thus no hearing is required for Mr. Diaz to present evidence to prove that fact. For this reason, the Court denies Mr. Diaz's Motion for an Evidentiary Hearing. Further, the Court agrees that Mr. Diaz should provide a log of any errors in the filter team's review, and hereby orders him to do so no later than Monday, February 12, 2024.

**II.     Dismissal of the Indictment Is Not Warranted Under the Sixth Amendment or the Court's Supervisory Powers.**

On the instant motion, Mr. Diaz argues that the government violated his Sixth Amendment Right to counsel by obtaining data from his iCloud account that includes privileged attorney-client communications. Doc. 18 at 7. To remedy this violation or, in the alternative, in the exercise of its supervisory powers, Mr. Diaz contends that the Court should dismiss the indictment herein. *Id.* at 7-10. The government opposes Mr. Diaz's motion. Doc. 20. As set forth herein, the Court finds that neither the Sixth Amendment nor the Court's supervisory powers warrant dismissal under the circumstances herein.

A.     <u>The Sixth Amendment Right to Counsel</u>

"The Sixth Amendment guarantees an accused the right to assistance of counsel for his or her defense." *Reali v. Abbot*, 90 F. App'x 319 (10th Cir. 2004) (citing *United States v. Morrison*, 449 U.S. 361, 364 (1981)). "This right, fundamental to our system of justice is meant to assure fairness in the adversary criminal process." *Morrison*, 449 U.S. at 364. "In *Weatherford v. Bursey*, the Supreme Court recognized that under some circumstances, a defendant's Sixth Amendment rights may be violated by the state's intrusion into the attorney-client relationship." *Shillinger v. Haworth*, 70 F.3d 1132, 1138 (10th Cir. 1995) (citing *Weatherford,* 429 U.S. 545 (1977)).

In *Shillinger*, the Tenth Circuit determined the relevant standards for establishing a Sixth Amendment violation where the state has become privy to privileged communications.

5

Specifically, the Tenth Circuit held that where the prosecutor's intrusion into the attorney-client relationship is *intentional*, such intrusion "constitutes a direct interference with the Sixth Amendment rights of a defendant," and "absent a countervailing state interest, such an intrusion must constitute a *per se* violation of the Sixth Amendment." 70 F.3d at 1142. Thus, the Tenth Circuit adopted the following rule: "when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed." *Id.* When, however, "the state has a legitimate law enforcement purpose for its intrusion," such cases "require proof of 'a realistic possibility of injury to the defendant or benefit to the State' in order to constitute a violation of a defendant's Sixth Amendment rights." *Id.* (quoting *Weatherford*, 429 U.S. at 557).

In terms of determining the appropriate remedy for a Sixth Amendment violation, in recognition of "the necessity for preserving society's interest in the administration of criminal justice . . . [c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Morrison*, 449 U.S. at 364. Thus, the Supreme Court's "approach [] has been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365. It follows that "[t]he remedy in a criminal proceeding is limited to denying the prosecution the fruits of its transgression." *Id.* Indeed, absent an "impact on the criminal proceeding," such as "some adverse effect upon the effectiveness of counsel's representation" or "some other prejudice to the defense," "there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial." *Id.*

"More particularly, absent demonstrable prejudice, or a substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Id.*; *see also United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1118 (10th Cir. 1998) ("Because it is a drastic step, dismissal of an indictment is a disfavored remedy.") "Before deciding to dismiss a case, a district court must consider whether a lesser sanction would satisfy the competing consideration at issue," and the "failure to consider alternative adequate remedies [is] an abuse of [the district court's] discretion." *Lin Lyn Trading*, 149 F.3d at 1118.

In the instant case, Mr. Diaz argues that "[i]t appears that the government purposely sought electronically stored data that encompasses the post arrest period . . . seemingly with the only purpose of perusing and reading attorney-client privileged communications." Doc. 18 at 7, 9. Specifically, Mr. Diaz asserts that because the data sought and received pursuant to the Apple search warrant includes data related to a telephone number that he continues to use "and on which he has communicated with his counsel both by text and voice calls," the "government now has those privileged communications, resulting in a blatant violation" of his Sixth Amendment rights. *Id.* at 7. Further, Mr. Diaz insists that "[t]here is no justifiable reason for obtaining Mr. Diaz's iClould data . . . for a timeframe the government knew Mr. Diaz was represented by counsel." Doc. 39 at 2. Accordingly, Mr. Diaz argues that, under *Schillinger*, the search warrant constitutes a *per se* violation of his Sixth Amendment rights requiring dismissal of the indictment herein. Doc. 18 at 7.

The Court is not convinced. First, Mr. Diaz has provided "no evidence to suggest that the government should have known that the [Apple] search warrant would capture Mr. [Diaz]'s attorney-client communications." *United States v. Johnson*, No. 11-CR-501 DN, 2016 WL 332042, at \* (D. Utah Jan. 12, 2016). Indeed, Mr. Hirsch, as an officer of the court, has represented

that "no one on the prosecution team had any knowledge" that Mr. Diaz "used messages or emails backed up" to the account for which it obtained the search warrant "to communicate with counsel." Doc. 20 at 9. Moreover, Mr. Hirsch provided to defense counsel the entirety of the data received pursuant to the search warrant, including any potentially privileged documents, even before he had completed his own review of the data. If the government "had intentionally sought to access privileged materials relating to [Mr. Diaz's] defense strategy, it is highly unlikely that it would have given [defense counsel] evidence showing that it had gained access to such documents." *United States v. Elbaz*, 396 F. Supp. 3d 583, 595 (D. Md. 2019). Further, when defense counsel alerted the government that the search warrant potentially captured privileged communications, Mr. Hirsch instructed the DEA analyst to suspend his review of the production and to refrain from disclosing any of the results of his review, and the government set up a filter team to review the data for privileged communications. The government's handling of the data "is inconsistent with intentional misconduct." *Id.*

  Next, other than noting that the search warrant applied to a period during which he was represented by counsel, Mr. Diaz provides no support for his assertion that the search warrant lacked a legitimate purpose. But the government makes clear that it intended to review the data for the purpose of uncovering evidence of drug trafficking or related firearms possession. Doc. 20 at 5. The search warrant thus was intended to be "used as a legitimate law enforcement tool to investigate" drug trafficking and related firearms possession. *Johnson*, 2016 WL 332042, at *4.

  Because Mr. Diaz has failed to show that the government's intrusion into his privileged communications was intentional and that it lacked a legitimate purpose, the search warrant does not constitute a per se violation of his Sixth Amendment rights. Accordingly, under *Shillinger*, to establish a violation of those rights, he must show a realistic possibility of injury to himself or

8

benefit to the government. But Mr. Diaz has made no effort to make this showing, insisting instead that the mere fact that "the government is likely in possession" of privileged communications "create[es] a sufficient showing of prejudice." Doc. 39 at 5; *see also id.* ("[T]here is a substantial threat of prejudice as the government is likely in possession of privileged communication contained within the iCloud data."). This is simply not the law. In the absence of both an intentional intrusion into Mr. Diaz's attorney-client relationship and a lack of legitimate purpose, the undisputed fact that the search warrant potentially captured privileged communications is not the end of the Sixth Amendment inquiry. Rather, *Schilllinger* makes clear that, under these circumstances, there can be no Sixth Amendment violation without "proof of a realistic possibility of injury to the defendant or benefit to the State." 70 F.3d at 1142. Mr. Diaz has not met this burden of proof and thus has not established a violation of his Sixth Amendment rights.

Indeed, the Court would be hard-pressed to find the requisite prejudice here. Mr. Hirsch has represented that his partial review of the data did not reveal any attorney-client or otherwise privileged communication and that, pending resolution of this issue, "no member of the trial team will review the iCloud data." Doc. 20 at 1. Nor did the DEA analyst disclose to Mr. Hirsch or anyone else the results of his truncated review of those communications. To date, no member of the trial team "has seen a single privileged document." *Johnson*, 2016 WL 332042, at *5. Further, a filter team is in place to prevent disclosure of privileged communications to the trial team. The government intends for the filter team to examine whether the data includes any privileged communications, screen any such communications out from the remainder of the data, provide the remaining data to defense counsel for her review, and, only after defense counsel has confirmed that the remaining data does not contain privileged communications, provide the data to the trial team. Accordingly, there is no reason to believe that any "member of the prosecution team has or

9

will use [any privileged] materials in any way." *Id.*

Mr. Diaz takes issue with the idea of a filter team, arguing that the use of filter teams has been "criticized and discouraged by other courts." Doc. 39 at 2. But "despite [Mr. Diaz]'s contentions to the contrary, it is well-established that filter teams – also called 'taint teams'—are routinely employed to conduct privilege reviews." *In re: Sealed Search Warrant and Application for a Warrant by Tel. or Other Reliable Elec. Means*, No. 20-3278-MJ, 2020 WL 6689045, at *2 (S.D. Fla. Nov. 2, 2020) (collecting cases); *Eastman v. United States*, 615 F. Supp. 3d 1250, 1258 (D.N.M. 2022) ("[P]rosecutors commonly form a "Filter Team" to review all documents, identify and separate documents subject to a privilege claim, and coordinate with opposing counsel on whether the material may be redacted or is subject to waiver or an exception to a privilege."). Indeed, in neither of the cases cited by Mr. Diaz "did the court find that a defective filter process violated the Sixth Amendment or required the indictment to be dismissed." *United States v. Snyder*, 71 F.4th 555, 567 (7th Cir. 2023). Specifically, in *In re Grand Jury Subpoenas*, the court rejected the government's request to conduct a privilege review of documents that had been subpoenaed from a third party but had not yet been received. 454 F.3d 511 (6th Cir. 2006). In doing so, the court contrasted the circumstances before it from those present here, explaining that "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant." *Id.* at 522. Far from criticizing the use of a filter team in such cases, the court actually recognized that because "the potentially-privileged documents are already in the government's possession . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather that injurious to the protection of privilege." *Id.* at 522-23. Similarly, in *United States v. Neill*, while the court stated in a footnote that "the taint team

10

procedures create an appearance of unfairness," it then immediately added that, "[h]owever unwise this policy decision may be, absent a showing of harm, it does not offend the Constitution." 952 F. Supp. 834, 841 n.14 (D.D.C. 1997). The court ultimately found "no evidence of a harmful disclosure resulting from the taint team's review," and thus denied the defendant's motion to dismiss the indictment. *Id.* at 841-42.

In short, because the trial team did not access any privileged communications before setting up the filter team, because the filter team will shield the trial team from accessing any such privileged communications, and because defense counsel will have the opportunity to review the data before it is provided to the trial team, there is no proof of a realistic possibility of injury to Mr. Diaz or benefit to the government. And in the absence of such proof, the fact that the government may have received privileged communications pursuant to the search warrant is simply insufficient to establish a Sixth Amendment violation. And in the absence of a Sixth Amendment violation, no remedy is appropriate.

Indeed, even assuming *arguendo* that the search warrant did violate Mr. Diaz's Sixth Amendment rights, it would be an abuse of discretion for the Court to dismiss the indictment. As noted above, the Supreme Court has made clear that remedies for a Sixth Amendment violation must be tailored to the injury suffered, and "absent demonstrable prejudice, or a substantial threat thereof, dismissal of the indictment is plainly inappropriate." *Morrison*, 449 U.S. at 364. Indeed, as discussed above, there is no evidence that the government's possession of potentially privileged communications caused demonstrable prejudice or substantial threat thereof – there is no evidence that it had any "impact on the criminal proceeding," such as "some adverse effect upon the effectiveness of counsel's representation" or "some other prejudice to the defense." *Id.* Accordingly, "there is no basis for imposing a remedy" here. *Id.*

And, again, assuming *arguendo* that Mr. Diaz did suffer prejudice, the Court would be limited to imposing a remedy that "den[ies] the prosecution the fruits of its transgression." *Id.* An appropriately tailored remedy thus would be to deny the prosecution the opportunity to introduce into evidence any of the data received pursuant to the search warrant. The government, however, has filed a Notice of Self Suppression of Evidence, indicating that it will not use any of the data from Mr. Diaz's stored iCloud in its case-in-chief. Doc. 48. Accordingly, no further remedy would be necessary or appropriate to cure any potential injury to Mr. Diaz.

### B. The Court's Supervisory Powers

Mr. Diaz argues in the alternative that the Court should invoke its "supervisory powers to vindicate the integrity of the judicial process" and dismiss the indictment in order to "punish[] the agents' misconduct in an effort to ensure that such acts do not recur." Doc. 18 at 9. "A court may dismiss an indictment by relying on its supervisory powers." *United States v. Kuykendall*, No. 21-cr-793, 2022 WL 850700, at *3 (citing *United States v. Kilpatrick*, 821 F.3d 1456, 1465 (10th Cir. 1987)). "The supervisory powers theory is premised on the federal courts' inherent ability to formulate procedural rules not specifically required by the Constitution or the Congress." *Kuykendall*, 2022 WL 850700, at *3 (citing *Kilpatrick*, 821 F.3d at 1465). Invoking the court's supervisory powers to dismiss an indictment, however, "is a drastic remedy, plainly inappropriate without full consideration and rejection of more narrowly tailored measures to deter improper prosecutorial [or government] conduct." *Kuykendall*, 2022 WL 850700, at *3 (citing *United States v. Bolain*, 933 F.3d 1019 (10th Cir. 1991)).

Under this standard, Mr. Diaz has failed to show that dismissal of the indictment is a proper use of this Court's supervisory powers. While Mr. Diaz claims that the government's conduct was a "flagrant interference" in Mr. Diaz's relationship with his counsel, Doc. 18 at 9, as discussed

above, he has failed to support this claim with any evidence that the government obtained the search warrant with the intention of accessing privileged communications. By the same token, he has not shown that, by seeking the search warrant, the government engaged in illegal conduct. *Kuykendall*, 2022 WL 850700, at *3. Nor has Mr. Diaz "presented any facts showing that the government's conduct impaired this Court's integrity as an independent body." *Id.* Accordingly, the Court cannot agree that the government's conduct demonstrates a "blatant and egregious disregard for the individual rights instilled by our constitution." Doc. 18 at 9. The Court thus declines Mr. Diaz's invitation to invoke its supervisory powers to impose the drastic remedy of dismissal here.

## CONCLUSION

Mr. Diaz has failed to establish that the Apple search warrant violated his Sixth Amendment rights. Even if he had established such a violation, he has failed to show any prejudice resulting therefrom. And even if he had established such prejudice, the government's self-suppression of all data obtained pursuant to the search warrant would obviate the need for any further remedy. It would be improper under either the Sixth Amendment or this Court's supervisory powers to dismiss the indictment. The Court does not require an evidentiary hearing to reach this determination, as there are no material facts in dispute.

**IT IS THEREFORE ORDERED THAT** Mr. Diaz's Motion to Dismiss the Indictment for Government Infringement of Mr. Diaz's Sixth Amendment Right to Trial [Doc. 18] and Mr. Diaz's Motion for Evidentiary Hearing on Defendant's Motion to Dismiss for Government Infringement of Mr. Diaz's Sixth Amendment Right to Counsel [Doc. 79] are **DENIED**.

**IT IS FURTHER ORDERED THAT** Mr. Diaz must provide a log of any errors in the filter team's review, and hereby orders him to do so no later than Monday, February 12, 2024.

ENTERED this 8th day of February 2024.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE