UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                  No. 24-CR-0032 MV

FRANCISCO DIAZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Mr. Diaz's Motion to Dismiss the Indictment for Government Violation of Defendant's Sixth Amendment Right to Compulsory Process [Doc. 80]. Having considered the briefs and relevant law, having heard oral argument, and being otherwise fully informed, the Court finds that the motion is not well-taken and will be denied.

### BACKGROUND

On September 3, 2019, agents with the Drug Enforcement Administration ("DEA") and officers with the Region III Narcotics Task Force executed a warrant authorizing the search of Francisco Diaz's home at 7 Josephine Road in Santa Fe, New Mexico. Based on the search and an interview with Mr. Diaz, Mr. Diaz was charged with possession with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(B), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Trial in this matter is scheduled to begin on February 26, 2024.

On January 12, 2024, the Court held a hearing on Mr. Diaz's Motion to Suppress Statements and Evidence [Doc. 6]. During the hearing, Mr. Diaz called his fiancée, Michelle Romero, as a witness. After direct examination regarding the events of the morning of September

1

3, 2019, government counsel cross-examined Michelle Romero, and asked whether she had seen "any cocaine in the master bedroom closet . . . in the days before September 3rd." Doc. 59 at 105:4-106:10. Defense counsel objected on relevance grounds, government counsel countered that it was "clear impeachment," and the Court observed that there were "potential Fifth Amendment issues." *Id.* Government counsel then stated in relevant part, "Then she can invoke the Fifth Amendment. We won't be charging her." *Id.* Defense counsel conceded, "The Court is right, [Michelle Romero] has a Fifth Amendment. If [government] counsel is going to ask that question, then she needs to have an attorney appointed to her." *Id.* Government counsel indicated that he would "end it there," as, "if the witness [was] going to invoke the Fifth, there [would be] no reason to proceed further." *Id.* The Court asked the witness whether that was what she was "going to do," and the witness responded, "Yes, Your Honor." *Id.*

Thereafter, on January 19, 2024, Mr. Diaz filed his Witness List, which included Michelle Romero, and indicated that she "[m]ay have information regarding the accessibility and whereabout [sic], prior to 9-3-19, of firearms found in the master bedroom closet at 7 Josephine." Doc. 40. Mr. Diaz's Witness List also included Daniel Diaz, Mr. Diaz's brother, and indicated that he, too, "[m]ay have information regarding the accessibility and whereabout [sic], prior to 9-3-19, of firearms found in the master bedroom closet at 7 Josephine." *Id.*

In an email to the Court and copied to defense counsel on January 30, 2024, government counsel indicated his belief that, based on his initial, partial review of data from Mr. Diaz's iCloud account that had since been "walled off" from him after defense counsel indicated the possibility that the data included attorney-client communications, "there is a risk that defense witnesses will perjure themselves during their testimony." Doc. 80-1. As a result, government counsel advised that these witnesses "should be permitted to consult with independent counsel before they

proceed." *Id.*

In response, the Court asked government counsel to submit further information regarding which defense witnesses the government believed might perjure themselves and the basis for this belief. Government counsel replied that the witnesses in question were Michelle Romero[1] and Daniel Diaz. As to Michelle Romero, government counsel noted in relevant part that she had "testified at the suppression hearing that she would have invoked the Fifth Amendment in response to my questions about the cocaine. I don't think charging her would be a good use of anyone's time, but I can't bind the state, and if I were her I'd want my own lawyer." Doc. 80-2.  As to Daniel Diaz, government counsel recalled reviewing a conversation in which "Mr. Diaz discussed the case with another party, who was clearly a male friend or relative. The friend/relative suggested that Mr. Diaz would be in better shape if only he could figure out who the guns belonged to. Mr. Diaz did not respond to that message." *Id.* Government counsel reasoned that if the friend/relative involved in this exchange was indeed Daniel Diaz, "this exchange is potentially problematic if Defendant's brother testifies that he placed the pistols in Defendant's closet, or that he knew to whom the pistols belonged." *Id.*

Defense counsel did not respond to government counsel's concerns regarding Michelle Romero.  She did, however, advise that she and "[t]elephone forensics expert Wade Swift [had] gone through the messages between Mr. Diaz and his brother, Daniel Diaz and there is not a single message where they discuss Mr. Diaz's case or anything about firearms. The message to which [government counsel] referred in his email yesterday was from someone called "fatty" and the text that person sent stated "find who the guns belonged to really." Doc. 80-3.

---

[1] Government counsel initially confused Michelle Romero with Elora Romero, who is Mr. Diaz's ex-wife, and is not listed as a witness on Mr. Diaz's witness list. Government counsel has since clarified that his concerns applied to Michelle Romero, not Elora Romero.

Thereafter, on February 4, 2024, government counsel sent defense counsel an email message asking whether Michelle Romero had separate counsel. Doc. 80 at 3. Although it is not clear precisely when she did so, defense counsel asserts that she has "suggested to Daniel Diaz and Michelle Romero to consult with separate counsel." *Id.*

On February 6, 2024, during a meeting at the DEA, "defense counsel and government counsel engaged in a disagreement," the subject of which is irrelevant to the instant motion. According to the Declaration of Paula Sanchez-Knudsen, a private investigator who also attended the meeting, during their disagreement, government counsel "accused [defense counsel] of encouraging witnesses to perjure themselves." Doc. 80-4. Ms. Sanchez-Knudsen also states that, in response to defense counsel saying that "if he was going to make such a serious allegation, he better produce evidence of it," government counsel "demanded to see [defense counsel]'s phone." *Id.*

On February 7, 2024, Mr. Diaz filed the instant motion, arguing that the government's "baseless claims that defense witnesses will perjure themselves if they testify," in addition to the government "directly and openly accus[ing] defense counsel of encouraging witnesses to perjure themselves" have infringed "Mr. Diaz's Sixth Amendment right to compulsory process requiring dismissal by this Court." Doc. 80 at 6. Mr. Diaz also asks the Court to hold an evidentiary hearing to make specific factual findings in connection with the instant motion. *Id.* at 9. The government filed a response in opposition on February 9, 2024, objecting both to dismissal of the indictment and to the need for an evidentiary hearing. Doc. 85. On February 10, 2024, Mr. Diaz filed a reply in further support of his motion. Doc. 86. In his reply, Mr. Diaz noted that, since filing the instant motion, his counsel "was notified by the attorney with whom Michelle Romero has consulted that Ms. Romero does not wish to testify." *Id.* at 2. Mr. Diaz has not represented to the Court that

Daniel Diaz no longer intends to testify.

## DISCUSSION

### I.     Mr. Diaz Is Not Entitled to an Evidentiary Hearing.

"A defendant who requests a hearing bears the burden of showing that there are disputed issues of material fact." *United States v. Barajas-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004) (citation omitted). For purposes of the instant motion, the Court assumes that the material facts as described by Mr. Diaz and as presented in the exhibits that he has submitted are accurate. The Court thus need not resolve any potential factual disputes between the parties to decide the instant motion.

Further, the Court does not agree with Mr. Diaz's argument, made for the first time in his reply brief, that the Court "must hold an evidentiary hearing regarding the effect" that the government's conduct "has had on the defense witnesses' willingness to testify." Doc. 86 at 3. The Court need not reach this issue because, as set forth herein, the Court does not find, in the first instance, that the government's conduct infringed Mr. Diaz's constitutional rights. In the absence of unlawful conduct in the first instance, any "effect" of the government's (lawful) conduct on the defense witnesses' willingness to testify is not material. Accordingly, the Court declines to hold an evidentiary hearing before deciding the merits of the instant motion.

### II.    Dismissal of the Indictment Is Not Warranted, as Government Counsel Did Not Deprive Mr. Diaz of his Constitutional Right to Present a Defense.

"A criminal defendant's right to present a defense is essential to a fair trial." *United States v. Serrano*, 406 F.3d 1208, 1214 (10th Cir. 2005). The Fifth Amendment and the Sixth Amendment "concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses." *Id.* at 1215. Specifically, the Fifth Amendment "right to due process includes a right to be heard and to offer testimony." *United*

5

*States v. Pablo*, 696 F.3d 1280, 1295 (10th Cir. 2012) (citation omitted). And the Sixth Amendment "right to compulsory process guarantees the defendant the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Id.* (citation omitted).

Nonetheless, "[a] defendant's right to present a defense . . . is not absolute." *Serrano*, 406 F.3d at 1215. "The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* Notably, "a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege against self incrimination." *Pablo*, 696 F.3d at 1295.

Yet while "a witness may freely invoke his privilege against self incrimination even at the expense of the defendant's right to present a defense, the government cannot substantially interfere with a defense witness's decision to testify." *Id.*; *see Webb v. Texas*, 409 U.S. 95, 97-98 (1972) (holding that a trial judge's "lengthy and intimidating warning" and "threatening remarks" effectively caused the defendant's only witness not to testify in violation of the Due Process Clause). The restriction on government action extends to prosecutors. *Pablo*, 696 F.3d at 1295.

In determining whether "the government impermissibly interfered with a witness's decision to testify," the dispositive question is "whether the government's interference was 'substantial.'" *Id.* at 1216. In turn, "[i]nterference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering." *Serrano*, 406 F.3d at 1216. Importantly, "[t]he potential for unconstitutional coercion by a *government actor* significantly diminishes . . . if a defendant's witness elects not to testify after consulting an independent attorney." *Id.* (emphasis in original).

For example, in *Serrano*, the Tenth Circuit found no substantial interference where the

6

prosecutor "did not act in bad faith when he notified the court that the witnesses' testimony could subject them to prosecution." *Id.* Addressing the defendant's argument that "the prosecutor was disingenuous in raising the self-incrimination issue" and only raised the issue "to gain a tactical advantage at trial," the Court indicated that the record did not support this argument, citing *United States v. Crawford*, 707 F.2d 447, 450 (10th Cir. 1983), for the proposition that "an assistant United States attorney has an obligation to disclose the fact that several of the defense witnesses were targets of other investigations," and *United States v. Jackson*, 935 F.2d 832, 847 (7th Cir. 1991), for the proposition that "ethical duties require prosecutors to warn unrepresented witnesses of the risk that the testimony they are about to give may be used against them." *Serrano*, 406 F.3d at 1212 n.1. In finding that the prosecutor did not "discourage[] the witnesses from testifying through threats of prosecution, intimidation, or coercive badgering," the Court noted, "Indeed, nothing in the record indicate[d] the prosecutor ever spoke a word to [the witnesses] about [their] testimony at trial." *Id*. The Court further noted that "[t]he witnesses invoked their Fifth Amendment privilege only after conferring with their independent attorneys." *Id.* Thus, the Court concluded that "[t]he witnesses' decision not to testify was not the product of improper *governmental* coercion . . ., but instead was a decision insulated from such governmental pressures by the independent and neutral advice of counsel," and accordingly, "[t]he governmental action" at issue "did not run afoul of the Due Process Clause." *Id.* (emphasis in original).

Finding the case before it to be "on all fours with *Serrano*," the *Pablo* Court similarly found that, rather than having "actively discourage[d]" the defendant's two witnesses from testifying through "threats of prosecution," the prosecutor had "merely raised his concern to the district court that the testimony of these two witnesses could lead to their prosecution." 696 F.3d at 1296. The Court noted that the prosecutor had not "misrepresent[ed] or otherwise overstate[d] his concern

7

but explained that he could not promise the Court that, depending on what they said, the United States would not prosecute them." *Id.* Further, the Court found that "[n]othing in the prosecutor's colloquy with the district court indicat[ed] active discouragement through the threat of prosecution." *Id.* The Court also found no support in the record for the defendant's argument that the prosecutor acted in bad faith by raising the self-incrimination issue, noting that the circumstances of the case "present[ed] a real risk that [the witnesses] may have incriminated themselves if they testified." *Id.* The Court next emphasized the fact that "each prospective witness received the advice of independent counsel before invoking the privilege against self-incrimination," which "significantly diminishe[d] the risk that [] the prosecutor [] unconstitutionally coerced the prospective witnesses not to testify." *Id.* at 1297. Thus, the Court concluded, "both prospective witnesses freely invoked the privilege against self-incrimination after conferring with independent counsel." *Id.*

In contrast, in *United States v. Orozco*, 291 F. Supp. 3d 1267 (D. Kan. 2017), the court found that the prosecutor substantially interfered with the defendant's witness in violation of the defendant's Sixth Amendment right to present a defense, where the prosecutor told the witness's attorney that the witness "could be charged with perjury if he testified, that [she] was aware of his pending charges and which prosecutor was handling [the witness's] case," and further that "seeking ramifications against [the witness] if he testified was a strong possible outcome." *Id.* at 1278. The court found that these comments "went far beyond a straightforward perjury warning," and constituted "a veiled threat of prosecution." *Id.* at 1280. While the witness had consulted with his attorney before deciding not to testify, the court found that "the tempering effect that independent counsel typically has on coercive warnings was diminished in this case because [his attorney] was apparently the messenger of [the prosecutor's] comments." *Id.* Finally, the court

noted that the prosecutor's other conduct in the case provided strong context for finding that she acted in bad faith, including her late disclosure of information that she represented to the court to be irrelevant but in fact was exculpatory *Brady* material. *Id.* at 1279.

Under the relevant standard and based on the facts presented by Mr. Diaz, the Court cannot conclude that the government substantially interfered with the testimonial decisions of Mr. Diaz's witnesses. As an initial matter, there is no indication that Daniel Diaz has decided not to testify. Accordingly, nothing that government counsel has said or done with respect to Daniel Diaz's potential to perjure himself has deprived Mr. Diaz of the benefit of Daniel Diaz's testimony. Mr. Diaz thus has failed to show that the government interfered at all, let alone substantially, with Daniel Diaz's decision to testify.

And while Mr. Diaz has represented that Michelle Romero has decided not to testify, the record does not support Mr. Diaz's claim that this decision was the result of the government's substantial interference. First, government counsel did not "actively discourage" Michelle Romero from testifying. *Pablo,* 696 F.3d at 1296. Mr. Diaz asserts that Michelle Romero "*has interpreted* the government's various allegations that witnesses may perjure themselves, the government's accusation against defendant counsel, and the government's statement during the suppression hearing about charging Ms. Romero as a threat that, if Ms. Romero testifies, she will be charged regardless of the veracity of her testimony." Doc. 86 at 2 (emphasis added). But this is not a reasonable interpretation in light of the record, and in any event, it is the government's conduct, not the witness's interpretation of that conduct, that is dispositive. Indeed, the transcript of the suppression hearing reflects that, far from threatening her with prosecution, government counsel explicitly represented, while Michelle Romero was on the stand, that the government "won't be charging her." Doc. 59. Further, while government counsel raised *with the Court* the specter of

perjury, inquired of *defense counsel* as to whether Michelle Romero had obtained separate counsel, and confronted *defense counsel* about what he perceived as *her* encouragement of witnesses to engage in perjury, there is no indication that government counsel "ever spoke a word" to Michelle Romero about her testimony at trial, much less intimidated or badgered her. *Serrano*, 406 F.3d at 1216. And while Mr. Diaz states in his reply brief that an unidentified DEA agent "has called defense witness Daniel Diaz at least twice in an effort to speak with him," there is no indication that the agent, or anyone else from the government, has actually spoken to him.

Similarly, government counsel did not "misrepresent or otherwise overstate his concerns" regarding potential perjury when he communicated those concerns to the Court. *Pablo*, 696 F.3d at 1296. Rather, government counsel conveyed to the Court via email message that, based on his recollection of documents to which he no longer had access, he perceived "a risk that defense witnesses will perjure themselves during their testimony." Doc. 80-1. His message did not "indicate active discouragement through the threat of prosecution," *Pablo*, 696 F.3d at 1296, but rather advised that these witnesses "should be permitted to consult with independent counsel before they proceed." Doc. 80-1. Accordingly, government counsel's comments were not "a veiled threat of prosecution," but rather "a straightforward perjury warning." *Orozco*, 291 F. Supp. 3d at 1280.

Nor does the record support Mr. Diaz's contention that the government's concerns were "baseless," and thus raised in bad faith for the sole purpose of "keep[ing] defense witnesses from testifying." Doc. 80 at 6, 3. Government counsel explained that his concerns regarding Michelle Romero were based on her testimony "at the suppression hearing that she would have invoked the Fifth Amendment in response to [his] questions about the cocaine." Doc. 80-2. And while he reiterated his position that "charging her would [not] be a good use of anyone's time," he indicated

10

that he could not "bind the state, and that if [he] were her, [he'd] want [his] own lawyer." *Id.* Indeed, defense counsel herself stated at the suppression hearing that Michelle Romero "has a Fifth Amendment" right at stake, and that if the government is "going to ask" her about the cocaine in the master bedroom closet (which he did at the hearing and represented that he would do again at trial), "then she needs to have an attorney appointed to her." Doc. 59. Given defense counsel's own stated belief, expressed *before* government counsel ever raised the issue, that Michelle Romero needed to have an attorney appointed to represent her, the Court is not inclined to find that it was in bad faith that the government reached the very same conclusion.

Similarly, the government described a conversation that he believed may have been between Mr. Diaz and Daniel Diaz in support of his concerns regarding Daniel Diaz. While defense counsel allayed that concern by clarifying that the message government counsel remembered was not from Daniel Diaz but instead was from someone called "Fatty," Doc. 80-3, defense counsel did not equally establish that the government's concern was conjured up to "intimidate witnesses from testifying," Doc. 80 at 6, rather than a function of faulty memory or mistaken identity. Notably, unlike the context in which the *Orozco* court found that the prosecutor had acted in bad faith, there is no other conduct in this case that would provide contextual support for a finding that, in advising the Court that Mr. Diaz's witnesses should have their own attorneys, government counsel acted in bad faith.

Finally, Michelle Romero invoked her Fifth Amendment privilege at the suppression hearing on January 12, 2024, *before* government counsel raised his concerns about perjury in his email message on January 30, 2024. Doc. 59. Accordingly, that decision necessarily "was not the product of improper *governmental* coercion." *Serrano*, 406 F.3d at 1216 (emphasis in original). And it was only after she consulted with her own attorney that Michelle Romero notified defense

counsel that she did not wish to testify at all. Doc. 86 at 2. Accordingly, that decision "was insulated from [] governmental pressures by the independent and neutral advice of counsel." *Serrano*, 406 F.3d at 1216. Michelle Romero "freely" decided not to testify "after conferring with independent counsel," *id.* – counsel which defense counsel agreed was necessary and which she herself urged Michelle Romero to obtain. Doc. 86 at 4. Nor is there any reason to believe that "the tempering effect that independent counsel typically has on coercive warnings was diminished in this case," as Michelle Romero's attorney was not "the messenger" of any of government counsel's comments. *Orozco*, 291 F. Supp. 3d at 1280.

For these reasons, "the governmental action at issue [here] did not run afoul of the Due Process Clause." *Serrano*, 406 F.3d at 1216. It follows that there is no basis in either the Fifth or the Sixth Amendment to dismiss the indictment in this case.

**II.     Dismissal Pursuant to the Court's Supervisory Powers Is Not Warranted.**

Mr. Diaz argues in the alternative that the Court should invoke its "supervisory powers to vindicate the integrity of the judicial process" and dismiss the indictment to deter the government's "conduct that is aimed at preventing defense witnesses from testifying and at hampering the defendant's presentation of his defense." Doc. 80 at 9. "A court may dismiss an indictment by relying on its supervisory powers." *United States v. Kuykendall*, No. 21-cr-793, 2022 WL 850700, at *3 (citing *United States v. Kilpatrick*, 821 F.3d 1456, 1465 (10th Cir. 1987)). "The supervisory powers theory is premised on the federal courts' inherent ability to formulate procedural rules not specifically required by the Constitution or the Congress." *Kuykendall*, 2022 WL 850700, at *3 (citing *Kilpatrick*, 821 F.3d at 1465). Invoking the court's supervisory powers to dismiss an indictment, however, "is a drastic remedy, plainly inappropriate without full consideration and rejection of more narrowly tailored measures to deter improper prosecutorial [or government]

conduct." *Kuykendall*, 2022 WL 850700, at *3 (citing *United States v. Bolain*, 933 F.3d 1019 (10th Cir. 1991)).

Under this standard, Mr. Diaz has failed to show that dismissal of the indictment is a proper use of this Court's supervisory powers. While Mr. Diaz claims that the government's conduct was "baseless and aimed only at keeping the defendant from presenting his witnesses and his defense," Doc. 80 at 9, as discussed above, he has failed to support this claim with any evidence that the government substantially interfered in his witnesses' decision to testify. By the same token, he has not shown that, by advising the Court that Mr. Diaz's witnesses should be represented by counsel, the government engaged in illegal conduct. *Kuykendall*, 2022 WL 850700, at *3. Nor has Mr. Diaz "presented any facts showing that the government's conduct impaired this Court's integrity as an independent body." *Id.* Accordingly, the Court cannot agree that the government's conduct demonstrates a "blatant, flagrant disregard for the integrity of the Constitution and the criminal process." Doc. 80 at 9. The Court thus declines Mr. Diaz's invitation to invoke its supervisory powers to impose the drastic remedy of dismissal here.

## CONCLUSION

Mr. Diaz has failed to establish that the government substantially interfered with his witnesses' decision to testify in violation of his due process rights under the Fifth Amendment or his right to compulsory process under the Sixth Amendment. It thus would be improper to dismiss the indictment on this basis. Further, it would not be a proper invocation of the Court's supervisory powers to dismiss the indictment. Finally, the Court does not require an evidentiary hearing to reach these determinations, as there are no material facts in dispute.

**IT IS THEREFORE ORDERED THAT** Mr. Diaz's Motion to Dismiss the Indictment for Government Violation of Defendant's Sixth Amendment Right to Compulsory Process [Doc. 80] is **DENIED**.

ENTERED this 23rd day of February 2024.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE