**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       No. 24-CR-0032 MV

FRANCISCO DIAZ,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Francisco Diaz's First Motion to Exclude Testimony by Proposed Expert Witnesses ("First Motion") [Doc. 43] and his Second Motion to Exclude Proposed Expert Testimony by Joseph Soeka and Agent Bryan Acee ("Second Motion") [Doc. 57]. The Court heard oral argument on these motions at the pretrial conference held on February 12, 2024. Having considered the briefs and relevant law and oral argument, and being otherwise fully informed, the Court finds that the First Motion is well-taken in part and will be granted in part. The Court further finds that the Second Motion is well-taken in part and will be granted in part.

**BACKGROUND**

On January 17, 2024, the government filed a Notice of Expert Testimony: Chemists, indicating its intent to call forensic chemists John McIlroy and Brandon J. Wilson. Doc. 21.[1] The Notice states that Mr. McIlroy will testify that he tested an item marked as "Exhibit 7" in his

---

[1] Since the First Motion does not object to Mr. Wilson's testimony, the contents of the Notice with respect to his testimony and qualifications are not relevant.

1

laboratory report, which contained a substance recovered on September 3, 2019 from Mr. Diaz's home. *Id.* at 2. He will further testify that the substance was Cocaine Hydrochloride and that it weighed 28.33 grams. *Id.* Attached to the Notice was a copy of Mr. McIlroy's *curriculum vitae*, which contained a list of his prior publications as well as a list of the cases from the past four years in which he has testified as an expert. Doc. 21–2. The Notice also contained a copy of the results of the laboratory report written by Mr. McIlroy. Doc. 21–3. The defense filed the First Motion to Exclude Testimony by Proposed Expert Witnesses on January 19, 2024, in which the defense noted that the Notice for Mr. McIlroy was deficient. Doc. 43. On January 26, 2024, the government filed a First Amended Notice of Intent to Call Expert Witnesses: Chemists. Doc. 55. In addition to the *curriculum vitae* and laboratory report that were previously filed, the amended notice contained a summary of Mr. McIlroy's testimony, signed and approved by Mr. McIlroy. Doc. 55–2.

On January 18, 2024, the government filed a Notice of Intent to Call Expert Witness: DEA Expert, which notified the Court and opposing counsel of the government's intent to call Special Agent ("SA") Joshua Belida as an expert in drug trafficking. Doc. 30. The Notice details that SA Belida will testify as follows:

1. SA Belida will testify about the common practices utilized in narcotics distribution and narcotics investigations;

2. He is prepared to offer testimony pertaining to how differing illegal narcotics are sold in various quantities. For example, where cocaine is sold by the kilogram, methamphetamine is commonly sold by the pound;

3. He is prepared to distinguish between personal use quantities and distribution quantities and can discuss the value of the illegal narcotics in this case. Special Agent Belida is also prepared to testify as to the tools of the drug trafficking trade, such as firearms. He

will testify that individuals who traffic in drugs frequently arm themselves to protect their merchandise and money from other drug traffickers or drug users;[2]

4. At trial, the United States expects SA Belida to testify about the exhibits containing substances discovered in Mr. Diaz's home, namely that the exhibits contain a net aggregate of 637.8 grams of cocaine;

5. SA Belida will testify that a typical dosage of cocaine is 1/10 (.1) gram and that the amount of cocaine seized in this case exceeds personal use and is instead consistent with distribution.

6. SA Belida will testify that large-scale cocaine dealers typically purchase cocaine in kilogram units and that dealers resell the cocaine in either kilogram or ounce units.

7. In September 2019, the approximate price per kilogram of cocaine when purchased in bulk was anywhere between $28,000 to $34,000 per kilogram and the price per ounce at street level was anywhere between $1,000 and $1,300 per ounce. The cocaine seized in this case had a value if purchased in bulk in the range of approximately $17,850 to $21,685, and a resale street value of approximately $22,500 to $29,250.

8. SA Belida may testify as to code words used by drug traffickers in voice and text messages to refer to controlled substances, drug proceeds, and firearms.

*Id.* at 2–3. The Notice states that these opinions will be derived from his education, training, and professional experience as a law enforcement officer. *Id.*

SA Belida is currently a Special Agent at the Albuquerque District Office of the DEA. Doc. 30–1 at 1. He received his bachelor's degree in Criminal Justice from Westfield State University

---

[2] The government has clarified that SA Belida will not be testifying about firearms as tools of the trade. Instead, the government intends to introduce this testimony through Special Agent Bryan Acee, as described below.

in 2008. *Id.* Since 2011 he has received the following training: Basic Agent Training (DEA Academy), Advance Tactics for Criminal Patrol, Money Laundering Seminar, Advanced Interview and Interrogation Technique, Cellebrite Certified Operator and Physical Analyst, Dark Web Investigators, Field Training Agent School. *Id.* He has also been a training instructor, teaching Basic Drug Investigator School classes and training other agents on Cellebrite technology. *Id.* He has testified as an expert three times in the last four years, including in a trial before this Court (*United States v. Michael Ortega,* 21–CR–665). *Id.*

On January 24, 2024, the government filed a Notice of Intent to Call Expert Witnesses: Technical Expert. Doc. 50. In the Notice, the government states that it intends to call Sentior Digital Investigative Analyst Joseph Soeka "who will testify regarding the methods used to create exhibits using Defendant's iCloud account." *Id.* at 1. Specifically, the government expects Mr. Soeka to testify "as to the use of forensic tools to download, review, and extract information from a production provided by Apple, Inc. in response to a search warrant for Defendant's iCloud account." *Id.* Mr. Soeka may also testify to "the processes that the Department of Justice uses to process encrypted files provided by Apple, Inc." and "that analysts in the Cybercrime Laboratory of the Department of Justice's Computer Crime and Intellectual Property Section ("CCIPS") use Cellebrite and similar programs to process that data and convert it into an easily-understandable and reviewable format." *Id.* at 2. Further, "Mr. Soeka will testify at trial that he used these processes to download, process, and open Defendant's iCloud data in Cellebrite. He will explain that he created the resulting extraction, which is similar to extractions produced for mobile phones like iPhones." *Id.* The government clarified at the pretrial conference that it will only seek to introduce Mr. Soeka's testimony if it intends to use the iCloud data to impeach Mr. Diaz. Hearing

Transcript ("H'rg Tr.") at 83: 15–18.[3]

The government filed an additional Notice of Intent to Offer Firearm Expert Witness Testimony on January 25, 2024. Doc. 53. The Notice states that the government intends to call FBI Special Agent Bryan Acee as an expert witness "as to firearm functionality, ammunition calibers, and the nexus between drug trafficking and firearms possessions." *Id.* at 1. Specifically, the government anticipates that SA Acee will testify that he conducted firearm function tests on DEA Evidence Item N–8, a Taurus PT 24/7, .40 caliber pistol and DEA Evidence Item N–9, a Bryco Model 48, .30 caliber pistol. *Id.* SA Acee will testify that he test-fired both firearms and that both firearms functioned as designed. *Id.* He will further testify that, after test-firing the two firearms, he examined a photograph of a box of ammunition and that the ammunition box depicted in the photograph was meant for .40 caliber ammunition, which would have fit the Taurus .40 caliber pistol. *Id.* at 2. Lastly, the Notice states that "SA Acee will testify that firearms are a tool of the drug trafficking trade, and that drug traffickers frequently carry firearms, especially handguns, to protect themselves and to protect their product and proceeds." *Id.*

SA Acee has been a law enforcement officer for 24 years. Doc. 53–1 at 1. He is a Certified Firearms Specialist, and his most recent training includes the following: FBI SWAT Senior Team Leader Certification Course (2023); Mid-South Institute of Combat Shooting Train the Trainer Swat Instructor School (2021); Certified Firearms Specialist Certification (2017); and International Firearms Specialist Academy (2017). *Id.* He received an FBI Exceptional Performance Award and the FBI Medal of Valor in 2023. *Id.* at 3. In the past four years, he has testified as an expert witness in at least 11 cases in the District of New Mexico. *Id.* at 2.

---

[3] The Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.

## DISCUSSION

### I.    The Objection to Mr. McIlroy's Testimony is Moot.

Mr. Diaz initially filed a motion seeking to exclude the testimony of John McIllroy, arguing that the government's disclosure was insufficient under Federal Rule of Criminal Procedure 16(a)(1)(G). Doc. 43 at 12. Specifically, Mr. Diaz alleged that the government did not provide the defense with a complete statement of all the opinions that the government will elicit from Mr. McIllroy, signed and approved by Mr. McIllroy, nor did it provide a list of all the other cases from the past four years in which Mr. McIllroy has testified. *Id.* The government filed an amended notice which contains a summary of the expected testimony, signed and endorsed by Mr. McIllroy. Doc 55–2. It also contains the cases in which Mr. McIllroy has testified over the past four years, although it should be noted that the original notice did contain this information. *Id.*

At the pretrial conference, defense counsel represented that, in light of the amended notice, there were no remaining objections to Mr. McIlroy's testimony. H'rg Tr. at 73:11. Since there is no dispute, the Court finds that Mr. Diaz's First Motion, as it relates to Mr. McIlroy's testimony, is moot.

### II.    The Objection to Mr. Soeka's Testimony is Moot.

Mr. Diaz moved to exclude Mr. Soeka's testimony on the basis that it would be irrelevant, since the government had represented it would not admit evidence from the iCloud data. Doc. 57 at 8-9. The government clarified at the pretrial conference that Mr. Soeka's testimony would only be used if the government uses the iCloud data to impeach Mr. Diaz. H'rg Tr. at 83:23–24. Defense counsel stated at the hearing that based on the government's representation, the initial objection was resolved. *Id.* at 84:1–2. Accordingly, the Court finds that Mr. Diaz's Second Motion, as it relates to Mr. Soeka's testimony, is moot.

III.     **Special Agent Belida Will Be Permitted to Testify, But His Testimony Will Be
         Limited.**

The defense first argues that there is no reliable scientific basis for SA Belida's proposed

testimony and it is therefore inadmissible under *Daubert v. Merrell Dow Pharmaceuticals,* 509

U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). Doc. 43 at 2.

Specifically, the defense argues that SA Belida's testimony is not based upon sufficient facts or

evidence, it is not the product of reliable principle and methods, and SA Belida has not applied the

principles and methods reliably to this case. *Id.* Based on the information before the Court at this

time, the Court cannot assess whether the government has satisfied its burden under Rule 702. The

Court will determine at trial whether the government has shown by a preponderance of evidence

that SA Belida's testimony is based on reliable principles and methods and that his opinions

constitute an application those principles and methods.[4] However, in light of recent changes to

Rule 702, the Court writes to clarify the relevant standard.

Under Rule 702 of the Federal Rules of Evidence, witnesses with the requisite "knowledge,

skill, experience, training, or education" may provide expert testimony if the proponent

demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier
>     of fact to understand evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to
>     the facts of the case.

Fed. R. Evid. 702.  Thus, the proponent of the expert testimony has the burden of showing that it

---

[4] It should be noted that neither party requested a *Daubert* hearing on SA Belida, nor does the
Court find that one is necessary, as the government has requested that the Court make a finding
of relevance and reliability upon hearing testimony at trial. Doc. 30 at 4.

is admissible by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n. 10; *United States v. Orr*, 692 F.3d 1079, 1091 (10th Cir. 2012).

In assessing the admissibility of a proposed expert's testimony, a trial court "generally must first determine whether the expert is qualified." *United States v. Avitia–Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (internal quotations and citations omitted). "If the expert is sufficiently qualified, then the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id*. To be admissible under Rule 702, evidence must be both relevant and reliable. *Daubert*, 509 U.S. at 589. The trial judge is to maintain a gatekeeping function, only admitting evidence that is both relevant and reliable. *Id*. at 597. The Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael* extended the holding in *Daubert* such that the trial judge's gatekeeping function applies not only to testimony based on scientific knowledge but also to testimony based on technical and other specialized knowledge. 526 U.S. 137, 141 (1999).

In the past, courts have held that the Federal Rules of Evidence "encourage the admission of expert testimony." *See, e.g., United States v. Channon*, No. CR 13-966, 2015 WL 13666980, at *3 (D.N.M. Jan. 8, 2015) (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 702.02[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2012)). Thus, courts have operated on the presumption "is that expert testimony is admissible." *Id.* (quoting 4 Weinstein & Berger, *supra,* § 702.02[1]). However, amendments to Rule 702 recently took effect on December 1, 2023. The Advisory Committee amended the language in Rules 702(b) and (d) so that a proponent of expert testimony must demonstrate that it is "more likely than not" that "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b), (d). In support of this change, the Committee noted that the changes "respond to the fact that many courts have declared the requirements set forth in Rule 702(b) and

(d) . . . are questions of weight and not admissibility, and more broadly that expert testimony is presumed to be admissible." Proposed Amendments, Excerpt from May 15, 2022 Report of the Advisory Committee on Evidence Rules. The Committee found that "these statements misstate Rule 702, because its admissibility requirements must be established to a court by a preponderance of the evidence." *Id.* Further, the Committee wrote that "the language of the amendment more clearly empowers the court to pass judgment on the conclusion that the expert has drawn from the methodology." *Id.* Although the Court in *Daubert* explained that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," 509 U.S. at 596,   the amendments to Rule 702 stand for the proposition that "judicial gatekeeping is essential" because "jurors may lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology reliably support." Fed. R. Evid. 702, Advisory Committee Note to 2023 Amendment.

Courts must assess the principles and methods applicable to law enforcement expert testimony. "While the terms 'principles' and 'methods' may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony based on technical or other specialized knowledge." Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendment. For instance, "when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions use code words to conceal the nature of their activities" and "the method used by the agent is the application of extensive experience to analyze the meaning of the conversations." *Id.*

Nevertheless, district courts routinely admit law enforcement officers as expert witnesses and "appellate courts are seemingly unwilling to scrutinize district courts' decisions to qualify law

enforcement members as experts." Brian R. Gallini, *To Serve and Protect? Officers as Expert Witnesses in Federal Drug Prosecutions,* 19 Geo. Mason L. Rev. 363, 390 (2012) (citing *United States v. Reynoso,* 336 F.3d 46, 49 (1st Cir. 2003), *United States v. Jeanetta,* 533 F.3d 651, 658 (8th Cir. 2008), *United States v. Emmanuel,* 565 F.3d 1324, 1336 (11th Cir. 2009)). This is disconcerting for at least two reasons: 1) the amendments to Rule 702 reflect an intent to empower courts to take seriously their role as gatekeepers of expert evidence and 2) "the categories of permissible law enforcement expert testimony keep expanding." *Id.* Thus, the Court emphasizes that the government cannot rely on SA Belida's experience alone to justify admitting SA Belida as an expert. *See* Fed. R. Evid. 702, Advisory Committee Note – 2000 Amendment ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"). In keeping with its gatekeeping role, the Court must ensure that the government is able to explain how the expert's experience has led to the conclusion reached, how that experience is an appropriate basis for the offered opinion, and how the experience is reliably applied to the facts. Accordingly, the government will be able to present testimony from SA Belida if they make a careful showing, by a preponderance of the evidence, that his testimony satisfies the requirements of Rule 702.

### A. Special Agent Belida's Testimony is Relevant and Would Not Constitute Impermissible Profile Evidence.

Next, the defense objects to SA Belida's testimony because it is irrelevant and would constitute impermissible profile evidence. As a general matter, SA Belida's opinion about general drug trafficking concepts is relevant in this case. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. In the context of Rule 702, the expert must provide testimony based on their specialized knowledge

that is "beyond the ken of the average juror." *United States v. Michael*, No. CR 06-1833, 2007 WL 9657855, at *3 (D.N.M. Nov. 15, 2007) (quoting *United States v. Tapia-Ortiz*, 23 F.3d 738, 740–41 (2d Cir. 1994)). There are many aspects of drug trafficking that fall outside of the common knowledge of the average juror. *See United States v. Walker*, 179 F. App'x 503, 507 (10th Cir. 2006) ("in narcotics cases, expert testimony [by a law enforcement officer] can assist the jury in understanding transactions and terminology."). For instance, the average juror may not know that the typical dosage unit for cocaine is 1/10 of a gram or the relevant terminology associated with the sale of cocaine. *See United States v. Quintana*, 70 F.3d 1167, 1171 (10th Cir. 1995) (detective's expert testimony that "term 'ball' meant 'one eighth of an ounce of cocaine, an 8 ball" fell within parameters of Rule 702). Thus, SA Belida's proposed testimony is generally relevant and helpful, with some exceptions as described below.

Furthermore, SA Belida's testimony would not constitute impermissible profile evidence. Profile evidence refers to descriptions of abstract characteristics "found to be typical of persons transporting illegal drugs." *United States v. Robinson*, 978 F.2d 1554, 1563 (10th Cir. 1992). For instance, if an expert testified that drug couriers tend to act in a nervous manner and tend to wear certain types of clothes, this would be profile evidence. *Florida v. Royer*, 460 U.S. 491, 493 (1983). By contrast, testimony about the actual practices of drug traffickers is not profile evidence. *Robinson*, 978 F.2d at 1563.

Nevertheless, the Court finds that SA Belida's testimony must be limited as follows.

### B.  Special Agent Belida May Not Testify that the Amount of Cocaine Recovered in This Case Exceeds Personal Use and is Consistent with Distribution.

The government's Notice states that SA Belida will testify that "the amount of cocaine seized in this case exceeds personal use and is instead consistent with distribution." Doc. 30 at 2.

The defense argues that this would be an opinion on the defendant's mental state which is impermissible under Rule 704(b). Doc. 63 at 2. Ultimately, the Court finds that it is bound by Tenth Circuit precedent and cannot restrict the proposed testimony on Rule 704(b) grounds. However, the Court notes significant problems with the Tenth Circuit's current interpretation of Rule 704(b) and finds that the testimony is not admissible because it is not helpful to the trier-of-fact under Rule 702.

      **i.**      **Rule 704(b)**

Under Rule 704(b) of the Federal Rules of Evidence, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did nor did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b). Thus, experts are prevented from "expressly stating the final conclusion or inference as to a defendant's mental state," but are permitted to testify to "facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Archuleta,* 737 F.3d 1287, 1297 (10th Cir. 2013) (quoting *United States v. Goodman,* 633 F.3d 963, 970 (10th Cir. 2011)).

It is unclear what kinds of testimony amount to a statement of "the final conclusion or inference as to a defendant's mental state." Fed. R. Evid. 704(b). On the one hand, an expert cannot explicitly comment that the defendant had the requisite *mens rea* for the charged crime. *United States v. Watson,* 260 F.3d 301, 309 (3d Cir. 2001) ("Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant."). However, courts disagree as to whether it is permissible to admit expert testimony that does not directly refer to the defendant's mental state but refers to a class of persons that typically possess the requisite *mens rea* or a category of evidence that typically signals that the

defendant had the requisite *mens rea*. For instance, the Fifth Circuit has found that expert testimony that drug couriers always know they are carrying drugs is the "functional equivalent" of testifying to the defendant's state of mind. *United States v. Lara,* 23 F.4th 459, 475 (5th Cir. 2022). On the other hand, the Ninth Circuit has found that 704(b) only limits an express and direct opinion on the defendant's mental state. *United States v. Diaz,* No. 21–50238, 2023 WL 314309 (9th Cir. Jan. 19, 2023).  This distinction will be at the heart of the Supreme Court's pending decision in *Diaz v. United States.*

In *Diaz,* the defendant was charged with Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952, 960. Brief of Petitioner ("BoP") at 8. In order to prove its case against Ms. Diaz, the government needed to show that she knew she was transporting drugs. *Id.* The government alleged that Ms. Diaz knew there was methamphetamine hidden in the doors of her boyfriend's car when she drove the car across the border from Mexico into the United States. *Id.*  At trial, the government called Homeland Security Investigations Special Agent Andrew Flood. *Id.* at 9.  The prosecution asked Agent Flood whether "large quantities of drugs [are entrusted to drivers that are unaware of those drugs" and Agent Flood responded, "No. In extreme circumstances — actually, in most circumstances, the driver knows they are hired." *Id.* at 10. He further explained that drug traffickers typically did not use unknowing drug couriers because they would not take the risk of the "cargo not making it to the new market." Brief in Opposition ("BiO") at 11. He added that in his experience, the use of unknowing couriers is "very rare." *Id.* The defendant appealed her conviction, arguing that the expert's testimony was impermissible under Rule 704(b). *Id.* On appeal, the Ninth Circuit upheld Ms. Diaz's conviction, holding that 704(b) only prevents expert witnesses from expressing an "explicit opinion" on the defendant's state of mind. *Diaz,* 2023 WL 314309.

In supplemental briefing ordered by the Court, the government argues that the issues in *Diaz v. United States* are not relevant to the instant motion because the case only refers to opinions about drug couriers. Doc. 76 at 1–2.[5] However, the underlying logic behind *Diaz* plainly applies here, as the question amounts to whether 704(b) only bars testimony that explicitly and directly refers to a defendant's *mens rea* or whether testimony regarding certain classes of persons or certain categories of evidence can be functionally equivalent to testimony about the defendant's intent. The issue in the instant motion is whether testimony that a certain amount of drugs exceeds personal use and is instead consistent with distribution would be the functional equivalent of testimony about the defendant's intent to distribute.

Notably, the Court in *United States v. Columbie,* No. 18-CR-2648, 2022 WL 17156048, at *4 (D.N.M. Nov. 22, 2022) recognized the implications of Rule 704(b) for the type of testimony proposed here. The Court barred a DEA expert from "offering an opinion about whether the evidence in this case was consistent with distribution" in a case where the defendant was charged with possession with intent to distribute, reasoning that such testimony would be "equivalent to the DEA agent testifying about the defendant's intent." *Id.* Instead, the Court restricted the parameters of the expert testimony to allow testimony about general subjects related to drug trafficking. *Id.* The government was further precluded from presenting any questions that would indirectly or directly refer to the facts of the case. *Id.* Regrettably, the opinion in *Columbie* seems

---

[5] The government argues that *Diaz* would have no effect on the "consistent with distribution" testimony proposed here, noting that even the Fifth Circuit has held that the "consistent with distribution" testimony they seek to introduce is admissible. Doc. 76 at 2. However, the cases cited by the government do not explicitly condone this type of testimony. In *United States v. Ramos-Rodriguez,* 809 F.3d 817, 826 (5th Cir. 2016) the Court analyzed drug courier profile testimony that did not include testimony about the amount of drugs in the case. In *United States v. Acrey,* 413 F. App'x 722, 723 (5th Cir. 2011) the Court merely noted that the conviction was supported by expert testimony "about distribution quantities," but did not specify whether the expert testified about the amount of drugs present in the specific case before it.

to run contrary to the Tenth Circuit's decision in *United States v. Draine,* where the Tenth Circuit held that it was not error for a district court to allow expert testimony that the amount of heroin found in the defendant's duffel bag would "definitely [be] a distribution" "would be used for distribution." 26 F.4th 1178, 1191 (10th Cir. 2022). The Court in *Draine* held that this testimony was admissible under Rule 704(b) because the expert "never made a conclusion as to the defendant's actual mental state." *Id.*

Thus, it appears that the Tenth Circuit has interpreted 704(b) to be permissive of the "consistent with" testimony at issue in this case. While the Court is bound by the Tenth Circuit's precedent in *Draine* and cannot restrict SA Belida's testimony on Rule 704(b) grounds, the Court notes significant problems with the Tenth Circuit's interpretation of Rule 704(b). In *Draine,* the defendant was charged with possession with intent to distribute heroin. 26 F.4th at 1178. At trial, the government presented expert testimony from Officer Blake Lawson. *Id.* at 1185. Officer Lawson testified in relevant part that the amount of heroin recovered in the case "would be definitely [sic] a distribution. It would be used for distribution." *Id.* The Tenth Circuit found no error in the admission of this testimony, reasoning that Officer Lawson "never made a conclusion as to [Mr. Draine's] actual mental state and did not profess to know [his] intent." *Id.* at 1191 (internal quotations and citations omitted).

The Court finds the Tenth Circuit's interpretation of Rule 704(b) concerning. The Fifth Amendment of the Constitution demands that the government prove its case beyond a reasonable doubt. *In re Winship,* 397 U.S. 364 (1970). "[T]his notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law." *Id.* (quoting *Leland v. Oregon,* 343 U.S. 790, 802–803 (1952) (Frankfurter, J., dissenting)). Furthermore, it has long been established that the government must prove to a jury all facts necessary to convict.

*Apprendi v. New Jersey,* 530 U.S. 466, 500–18 (2000). These principles motivate Rule 704(b), which emphasizes that whether a defendant had the appropriate *mens rea* to commit the charged crime is a matter "for the trier of fact alone." Fed. R. Evid. 704(b) The practice of using law enforcement experts to testify that the facts in the case fit a pattern of criminal conduct that typically indicates the presence of the requisite *mens rea* is therefore concerning, as oftentimes these experts "relieve[] the prosecution of its burden to prove that [the] defendant possessed the charged crime's requisite *mens rea* beyond a reasonable doubt*."* Gallini, 19 Geo. Mason L. Rev. at 367.

The permissive construction of Rule 704(b) endorsed by the Tenth Circuit in *Draine,* "effectively reduces the Rule to a toothless semantic nicety." BoP at 21. There seems to be no principled difference, other than a superficial change in language, between an expert who says, "the amount of drugs in this case would be used for distribution" and an expert who says, "the defendant, who had x amount of drugs, intended to distribute them." Similarly, to permit expert testimony that the amount of drugs in a particular case categorically exceeds personal use (as is proposed here) is to permit the expert to inform the jury what result to reach. There is a special danger associated with a lax construction of Rule 704(b), as "jurors are likely to recognize law enforcement officers' enhanced perception in discerning criminal behavior, and may therefore tend to defer to officers' opinions as to the defendant's criminal activity." Dean J. Nossel, *The Admissibility of Ultimate Issue Expert Testimony by Law Enforcement Officers in Criminal Trials,* 93 Colum. L. Rev. 231, 246 (1993). As the Second Circuit has noted, "there is something rather offensive in allowing" a law enforcement expert "to testify not simply that a certain pattern of conduct is often found in narcotics cases . . . but also that such conduct fitted that pattern." *United States v. Young,* 745 F.2d 733, 765–66 (2d Cir. 1984 (Newman, J., concurring).

There thus seems to be a conflict between the Tenth Circuit's interpretation of Rule 704(b) and several deep and abiding principles of the Constitution. While the Court is bound by Tenth Circuit precedent, it is important to note that the proper interpretation of Rule 704(b) is an open question, and the Supreme Court's pending decision in *Diaz v. United States* could have far-reaching implications for law enforcement expert testimony.

    **ii.    The Court Will Restrict SA Belida's Testimony Under Rule 702.**

Notwithstanding the requirements of Rule 704(b), the Court ultimately finds that SA Belida may not testify that the amount of cocaine seized in this case exceeds personal use and is consistent with distribution because such testimony would not be helpful to the trier-of-fact under Rule 702. *See* Advisory Committee Note Rule 704(b) ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact . . . [this] provision[] afford[s] ample assurances against the admission of opinions which would merely tell the jury what result to reach."). The Tenth Circuit has noted that Rule 702 "dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir. 1994). Further, the jury is entitled to use "logical and probabilistic" reasoning to determine whether Mr. Diaz intended to distribute the 637 grams of cocaine. *United States v. Atencio,* 435 F.3d 1222, 1232 (10th Cir. 2006). Since SA Belida will testify that a personal dose of cocaine is about 1/10th of a gram, and that drug traffickers typically distribute cocaine in kilograms, the jury is perfectly capable of inferring that 637.8 grams is significantly more than 1/10th of a gram, and closer to the kilogram unit used for distribution. In that same vein, SA Belida is permitted to testify generally about the price of cocaine in September 2019, but may not give an estimate on the value of the cocaine seized in this case. The jury is entitled to, and is capable of,

inferring the value of the cocaine relevant to this case based on SA Belida's general testimony.

In sum, SA Belida may testify regarding how differing illegal narcotics are sold in various quantities, and can distinguish, as a general matter, between personal use quantities and distribution quantities. Specifically, he may testify that a typical dosage unit of cocaine is 1/10 of a gram and that dealers typically purchase cocaine in kilogram units. Further, he may testify as to the approximate price of cocaine in September of 2019, but may not testify as to the value of the cocaine seized in this case. He may also not testify that the amount of cocaine seized in this case exceeded personal use and is consistent with distribution. As it is unclear whether the issue of code words will come up in this case, the Court reserves ruling on this aspect of the testimony.

## IV.   Special Agent Acee Will Be Permitted to Testify but the Testimony Will Be Limited.

Initially, the defense objected to SA Acee's testimony as cumulative of SA Belida's testimony as it relates to the practices of drug traffickers carrying firearms. However, the government has since clarified that only SA Acee will testify to this issue. The defense does not contend that SA Acee's testimony is unreliable, nor that SA Acee is unqualified. *See* Doc. 57. Accordingly, SA Acee will be permitted to testify, should the government satisfy the requirements of Rule 702, as described above. However, the defense objects to the following proposed testimony: "SA Acee will testify that firearms are a tool of the drug trafficking trade, and that drug traffickers frequently carry firearms, especially handguns, to protect themselves and to protect their product and proceeds." Doc. 53 at 2. The Court finds that SA Acee may not testify about firearms as tools of the drug trade and that drug traffickers frequently carry firearms to protect themselves, their product, and their proceeds.

### i.     Rule 704(b)

As noted above, the Court is bound by the Tenth Circuit's narrow interpretation of Rule 704(b) and cannot restrict SA Acee's testimony under the rule. However, the Court reiterates its concerns with the Tenth Circuit's interpretation, especially as it applies to SA Acee's testimony. Expert testimony cannot "merely tell the jury what result to reach," as this threatens to usurp the role of the jury as the trier-of-fact. Advisory Committee Notes to Rule 704(b). The threat to the jury's role is especially prescient in this case where the government intends to introduce evidence that Mr. Diaz's fear of his supplier motivated him to keep guns in the home to protect himself. Allowing SA Acee to testify that drug traffickers frequently use firearms to protect themselves, along with evidence that Mr. Diaz did just that, would be to permit the "functional equivalent" of testimony about Mr. Diaz's mental state. It is uniquely and wholly the province of the jury, as trier-of-fact, to determine whether a defendant did or did not possess the requisite *mens rea* associated with the crime charged. *Sullivan v. Lousiana,* 508 U.S. 275, 279–281 (1993). The Tenth Circuit's interpretation of Rule 704(b), as well as the routine practice of most federal courts in admitting the type of testimony proposed here, runs afoul of this fundamental principle.

### ii.     The Court Will Restrict SA Acee's Testimony Under Rule 702.

Ultimately, the Court finds that SA Acee's testimony must be limited because the government has not shown, by a preponderance of the evidence, that the testimony will be helpful to the jury. In the context of Rule 702, the expert must provide testimony based on their specialized knowledge that is "beyond the ken of the average juror."  *Michael*, 2007 WL 9657855, at *3. A common-sense inquiry reveals that the jury would be able to understand the evidence in this case without specialized knowledge of the relationship between drug traffickers and firearms. *Muldrow,* 19 F.3d at 1338. As one court has noted,

> On balance, I don't think average jurors need an FBI or DEA agent to tell them that drug dealers often use or possess firearms to protect themselves and their drugs and drug profits. I can't see the need for an expert on this issue any more than I would see the need for an expert in a bank robbery case to say that bank robbers like to wear masks or in a terrorism case to say that terrorists like to blow up bombs.

*United States v. Reddick,* 284 F. Supp. 3d 159, 162 (D. Conn. 2018); *see also United States v. Stanley*, 2016 WL 7104825, at *4 (D. Conn. 2016) ("the jury does not need an expert's opinion about the obvious proposition that drug dealers use violence and firearms to protect their drug trafficking activity."). Given the prevalence of news and media depicting the relationship between drugs and firearms, it is unreasonable to think that jurors, in 2024, need expert testimony to know that drug traffickers often carry and use firearms to protect themselves. Furthermore, there is a significant danger in allowing this testimony, especially where the expert's opinion neatly matches the government's theory of the case, as it is clear that when a witness is admitted as an expert, "a certain patina attaches to the testimony" running the risk that the jury will "give it more credence than it deserves." *United States v. Green,* 405 F. Supp. 2d 104, 118 (D. Mass. 2006).

Nevertheless, the government argues that SA Acee's testimony has been sanctioned by the Tenth Circuit in *United States v. McDonald,* 933 F.2d 1519 (10th Cir. 1991). The government is correct that in *McDonald,* the Court held that an expert could testify about "tools of the trade" of drug trafficking with which jurors may not be familiar. 933 F.2d at 1522. However, the expert in *McDonald* did not testify about firearms, but rather about the presence of a razorblade and large amounts of cash and some food stamps in the home. *Id.* The *McDonald* Court concluded that a juror would not understand the significance of these items without context about how drugs are cut to increase profits and that both cash and food stamps are exchanged for drugs. *Id.* The *McDonald* decision thus did not directly state that jurors would have no familiarity with the use of firearms in the drug trade and does not require the Court to permit this testimony.

In sum, the Court will allow SA Acee to testify that he conducted testing on DEA Evidence Item N–8, a Taurus PT 24/7, .40 caliber pistol and DEA Evidence Item N–9, a Bryco Model 48, .30 caliber pistol, and found that both firearms functioned as designed. He is also permitted to testify that after test-firing the two firearms, he examined a photograph of a box of ammunition and that the ammunition box depicted in the photograph was meant for .40 caliber ammunition, which would have fit the Taurus .40 caliber pistol. However, he will not be permitted to testify that drug traffickers frequently carry firearms and that they do so in order to protect themselves.

## CONCLUSION

The Court finds that the defense's objections to Mr. Soeka and Mr. McIlroy are moot. With respect to the testimony from Special Agent Belida, the Court will not permit him to testify that the amount of cocaine in this case exceeds personal use and is instead consistent with distribution, nor is he permitted to testify about the value of the cocaine seized in this case. Further, the Court will not permit Special Agent Acee to testify that drug traffickers frequently carry firearms and do so in order to protect themselves and their proceeds.

**IT IS THEREFORE ORDERED THAT:** The First Motion to Exclude Testimony by Proposed Expert Witnesses [Doc. 43] is granted in part and the Second Motion to Exclude Proposed Expert Testimony by Joseph Soeka and Agent Bryan Acee [Doc. 57] is granted in part, consistent with this Memorandum Opinion and Order.

ENTERED this 23rd day of February 2024.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE